CRAIG WILKE (150728)
craig@craigwilkelaw.com
305 N. Harbor Blvd., Suite 216
Fullerton, California 92832-1901
Telephone (714) 870-8900
Facsimile  (714) 879-2278

Attorney for Defendant
ARUTYUN OGANYAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ARUTYUN OGANYAN,<br><br>Defendant. | Case No. 2:18-cr-00782-MWF-1<br><br>**DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT AND POSITION RE: SENTENCING (REDACTED)**<br><br>Sentencing Date:  December 16, 2019<br>Sentencing Time:  2:00 p.m. |

    Defendant Arutyun Oganyan, by and through his attorney of record Craig Wilke, hereby files a memorandum setting forth his objections to the Presentence Report and Recommendation (CR 147, 148) and position regarding sentencing.

                                                      Respectfully Submitted,

                                                      /s/

Dated:  December 2, 2019                     _____
                                                     CRAIG WILKE
                                                     Attorney for Defendant

# **TABLE OF CONTENTS**

I. INTRODUCTION………………………………………………………………..2

II. STATEMENT OF FACTS….……………………………………………………2

III. OBJECTIONS TO PRESENTENCE REPORT AND RECOMMENDATION………………………………………………………..6

    A. Oganyan objects to the description of the offense conduct …………..6

        1. *Paragraph 16: July 2018 initial meeting with the CI*……………….6

        2. *Paragraph 18: September 15, 2018 meeting with the CI*………..…7

        3. *Paragraph 20: October 11, 2018 meeting with the CI* …………….7

        4. *Paragraph 21: October 12, 2018 effort to use tablet to connect to skimming devices*……………………………………………...7

    B. Oganyan objects to the loss adjustment.……………………………….7

    C. Oganyan objects to the recommended fine……….……..……………..8

    D. Oganyan objects to the recommended community-service condition of supervised release………………………………..……..……………9

IV. THE COURT SHOULD SENTENCE OGANYAN TO TEN-MONTHS IMPRISONMENT AND THREE-YEARS SUPERVISED RELEASE…….10

V. PLACEMENT RECOMMENDATION AND SELF-SURRENDER ………..11

# TABLE OF AUTHORITIES

**Cases**

*Kimbrough v. United States*, 552 U.S. 85 (2007) ……………………………..…..10

*United Guagliardo*, 278 F.3d 868 (9th Cir. 2002)………………………….………9

*United States v. Onyseoh*, 674 F.3d 1157 (9th Cir. 2012) …………….……...…..8

**Statutes, Rules and Sentencing Guidelines**

Title 18, United States Code

    Section 1349………………………………………………………………….2

    Section 3553(a).……………………………………………………..9-10

    Section 3583……………………………………………………………...9

Federal Rules of Criminal Procdeure

    Rule 32(i)(3)(B)……………………………………...………....6

United States Sentencing Guidelines (Nov. 2018)

    Section 2B1.1(b)(1)(A)…………………………………………………...7

    Section 2B1.1(b)(1)(D) …………………………………………………7

    Section 2B1.1, comment. (n.3)…………………………………………...7

    Section 2B1.2(b)(11)(A)(i)…..………………………………………..8, 10

    Section 5E1.2 …………………………………………..………....8

    Section 7B1.3(f) p.s.……………………………………………..10

# SENTENCING MEMORANDUM

## I.

## INTRODUCTION

Defendant Arutyun Oganyan appears for sentencing after pleading guilty to a single count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349. (Presentence Report (hereinafter "PSR") ¶¶ 2-3). The conspiracy, which involved the placement of skimming devices on gas station pump point-of-sale terminals, yielded three unauthorized access devices; and no actual loss was sustained. (PSR ¶¶ 14, 25, 110). The United States Probation Office ("USPO") calculates Oganyan's sentencing guideline range at 18-24 months based on a total offense level 13 and criminal history category III. (PSR ¶ 100). The USPO recommends that Oganyan be sentenced to twenty-four months imprisonment, a $3,000 fine, and three-years supervised release with a condition that he perform twenty hours of community service weekly unless otherwise excused by the USPO. (USPO Rec. pp. 1-2).

Oganyan objects to the USPO's sentencing guideline calculation. He submits that his sentencing guideline range is properly calculated at 10-16 months based on a total offense level 10 and criminal history category III. Oganyan also objects to the recommended fine and to the community service as a condition of supervised release. Oganyan submits that a sentence of ten-months imprisonment and three-years supervised release is sufficient, but not greater than necessary, to achieve the punitive, deterrent, protective and rehabilitative purposes of sentencing.

## II.

## STATEMENT OF FACTS

Arutyun Oganyan is forty-five years old. (PSR ¶¶ 62, 87). He was born and raised in Armenia and immigrated to the United States at age fifteen. (PSR ¶¶ 66-68). He dropped out of high school in the tenth grade to help support his ailing parents. (PSR ¶¶ 68, 87). He is a naturalized United States citizen. (PSR ¶ 74) He has been married to Kristina Panosyan for twenty-one years, and they have two sons – ages nineteen and

twelve. (PSR ¶ 70). Their eldest son is a codefendant in this case. (PSR ¶ 71). Oganyan owned and operated a jewelry business for seven years, and later a trucking business for twelve years. (PSR ¶¶ 89-90). He has a history of drug abuse and marijuana use. (PSR ¶ 85). In September 2015, at age forty-one, he suffered his fourth heart attack and underwent open heart surgery during which a triple bypass was performed. (PSR ¶ 77). He stopped working after his surgery and has been unemployed since then. (PSR ¶¶ 88-89).

In June 2016, Judge Real sentenced Oganyan to one-year and one-day imprisonment after he pleaded guilty to conspiracy to possess fifteen or more unauthorized access devices. (PSR ¶¶ 51, 53). Although his offense conduct was similar to the instant case (PSR ¶ 53), it was significantly more serious in that it involved 416 unauthorized access devices that were encoded to blank credit cards, and the parties agreed that the reasonable amount of loss attributable to Oganyan's conduct was more than $100,000 but less than $250,000. (*USA v. Artuyan Oganyan*, 2:15-cr-00621-R, PSR ¶¶ 19, 30-31, 91 (Doc. 245)). Oganyan was released on August 30, 2017, after serving approximately ten and one-half months in prison. (PSR ¶ 52).

In July 2018, an FBI confidential informant ("CI") approached Oganyan whom he had known for approximately twelve years. (PSR ¶ 16; *see also United States v. Oganyan, et al.*, 2:18-mj-02839 (Sealed Complaint at 5 n.1 (filed Oct. 25, 2018) (hereinafter "Complaint")). The CI had been convicted of fraud and was receiving financial benefits for his cooperation. (Complaint at 5 n.1). The CI, who was aware of Oganyan's recent conviction, asked him to obtain skimmers to be placed in the Sacramento and San Francisco area and offered him 50% of the proceeds. Having been unemployed since his release from prison ten months earlier and largely unable to work due to his medical condition, Oganyan agreed. (PSR ¶ 16).

On July 27, 2018, Oganyan and codefendant Koryun Pyuskulyan (whom the CI also knew) met the CI at Oganyan's home and discussed a plan to install skimming devices. (PSR ¶ 17). Thereafter, Pyuskulyan and the CI went to a storage unit where

3

1  Pyuskulyan showed the CI how to install a skimming device on a point-of-sale terminal.
2  (PSR ¶ 17).
3      On September 15, 2018, at a Hollywood apartment, the CI told Oganyan that he
4  had a crew ready to install the skimmers in Sacramento. (PSR ¶ 18). Oganyan gave the
5  CI seven skimming devices, tools, keys, gloves and security seal labels. (PSR ¶ 18).
6  Oganyan told the CI to bring back the broken latches. (PSR ¶ 18). Two days later, on
7  September 17, 2018, the CI traveled to Sacramento but did not install any of the seven
8  skimmers. (PSR ¶ 19). The following day, on September 18, 2018, agents provided the
9  CI with several gas pump latches. (PSR ¶ 19).
10     On October 11, 2018, the CI was given a tablet computer to use to download
11 credit card data and written instructions on how to use the tablet. (Plea Agr. at 7 (CR
12 133)). The CI was also given a restaurant gift card encoded with an unauthorized access
13 device. (PSR ¶ 20). Oganyan gave $500 cash to the CI. (PSR ¶ 20). The following day,
14 October 12, 2018, the CI telephoned Oganyan and told him that he was unable to
15 download any data from the four skimmers he had installed on the Sacramento gas
16 pumps. (PSR ¶ 21).
17     On October 15, 2008, Oganyan met with the CI at the Hollywood apartment.
18 (PSR ¶ 22). Pyuskulyan, [redacted]
19 [redacted],[1] was present at this meeting. (PSR ¶ 22). During this meeting, Oganyan, told the
20 CI that Pyuskulyan would accompany the CI the next time to make sure the skimmers
21 were properly installed. (PSR ¶ 22).

---

[1] [redacted]

4

On October 20, 2009, Oganyan met with the CI and Pyuskulyan ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ at Oganyan's residence. (PSR ¶ 23). Oganyan told the CI that he could pick up five skimmers at a nearby parking lot. (PSR ¶ 23). Oganyan also called codefendant Haroutioune Gadjoyan and told him that Pyuskulyan and the CI would pick him up. (PSR ¶ 23).

After picking up the five skimmers in the parking lot, the CI, Pyuskulyan and Gadjoyan drove to San Juan Capistrano where Pyuskulayn installed a skimmer inside a gas pump point-of-sale terminal. (PSR ¶ 24). Thereafter, they drove to San Diego where Pyuskulyan installed a second skimmer inside a gas pump point-of-sale terminal. (PSR ¶ 24). Three customers (M.G., K.L. and K.H.) used the point-of-sale terminal before the FBI removed the skimmer. (PSR ¶ 24). Pyuskulyan and the CI attempted to install a third skimmer but tripped an alarm. (PSR ¶ 25). Pyuskulyan telephoned Oganyan and they agreed that it was too risky to continue. (PSR ¶ 25). On the way back to Los Angles, Pyuskulyan and the CI downloaded three access devices belonging to G.R., G.M. and S.C. from the San Juan Capistrano gas station. (PSR ¶ 25). After leaving the gas station, Pyuskulyan called Oganyan. (PSR ¶ 25).

Oganyan was arrested at his home on October 26, 2019. (PSR p.1). He spent almost two months in custody until December 19, 2018, when he was released on a $250,000 fully secured bond on the condition that he submit to home detention with electronic monitoring. (PSR p.1).

### III.
### OBJECTIONS TO PRESENTENCE REPORT AND RECOMMENDATION

**A.   Oganyan objects to the description of the offense conduct.**

In pleading guilty, Oganyan admitted that, between September 15, 2018, and October 26, 2008, he conspired to defraud financial institutions through the use of unauthorized access devices (*i.e.*, credit and debit card numbers) that were to be obtained from skimming devices installed on point-of-sale terminals of gas station pumps. (PSR ¶¶ 14-15). Three unauthorized access devices were obtained from this

conspiracy. (PSR ¶ 25). Three other people used a point-of-sale terminal on which Pyuskulyan and the CI had installed a skimming device, but the FBI removed the skimming device before any unauthorized access devices were downloaded. (PSR ¶ 24) The CI was also provided with one additional unauthorized access device. (PSR ¶ 20). No actual loss resulted from the offense conduct. (PSR ¶¶ 33(b), 110).

The Offense Conduct described in the Presentence Report attributes statements and conduct to Oganyan to which he objects. None of these objections affect his sentencing guideline range. Nonetheless, as to each objection, Oganyan requests that the Court rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the Court will not consider the matter in sentencing. Fed. R. Crim. P. 32(i)(3)(B).

1. *Paragraph 16: July 2018 initial meeting with the CI.*

Oganyan objects to the statements (i) that he "directed the CI to assemble a crew of five persons," (ii) that he "told the CI that he would train the CI on the installation of skimmers and allow the CI's crew to operate independently," (iii) that he "told the CI . . . that [he] would receive 50 percent of the take," (iv) that he "assigned the territories of Sacramento and San Francisco to the CI," and (v) that he "identified skimming crews that used the pump to practice installing the skimmers that [Oganyan] provides." (PSR ¶ 16).

2. *Paragraph 18: September 15, 2018 meeting with the CI.*

Oganyan objects to the statement that he "instructed the CI to install skimming devices inside point-of-sale terminals of gas station pumps in Sacramento." (PSR ¶ 18).

3. *Paragraph 20: October 11, 2018 meeting with the CI.*

Oganyan objects to the statement that he gave the CI that tablet computer and the restaurant gift card encoded with an unauthorized access device at the October 11, 2018 meeting. (PSR ¶ 20). Oganyan acknowledges that that this is relevant conduct.

/

/

6

### 4. *Paragraph 21: October 12, 2018 effort to use tablet to connect to skimming devices.*

Oganyan objects to the statement that "the CI traveled to Sacramento and made several efforts to use the tablet to connect to the skimming devices without success." (PSR ¶ 21). As the CI did not install any skimming devices on Sacramento gas pumps (PSR ¶ 19), there would have been no reason from him to make any effort to use the tablet to connect to a skimming device.

### B. Oganyan objects to the loss adjustment.

The USPO calculates Oganyan's sentencing guideline range at 18-24 months based on a total offense level 13 and criminal history category III. (PSR ¶ 100). Oganyan objects to the six-level increase pursuant to U.S.S.G. 2B1.1(b)(1)(D) for "intended loss" of more than $40,000 but less than $95,000. (PSR ¶ 33(b)). Under the special rule that applies in unauthorized access device cases, the loss is $3,500 based on the seven unauthorized devices involved in this case. As loss does not exceed $6,500, no loss adjustment applies. U.S.S.G. § 2B1.1(b)(1)(A).

The guideline commentary provides that the "[g]eneral [r]ule" for calculating loss "is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, comment. (n.3(A)). However, "[n]otwithstanding [this general rule], . . . special rules shall be used to assist in determining loss" is certain cases. U.S.S.G. § 2B1.1, comment. (n.3(F)). Specifically, in "cases involving any . . . unauthorized access device, . . . loss includes any unauthorized charges made with the . . . unauthorized access device and shall not be less than $500 per access device." U.S.S.G. § 2B1.1, comment. (n.3(F)(i)). As the conspiracy in this case involved no unauthorized charges made with any unauthorized access device, and it involved no more than seven unauthorized access devices, no loss adjustment is warranted.

The Probation Office calculates loss by bootstrapping the presumptive $500 loss for each of the seven access devices to an estimated $48,000 of intended loss from the CI's purported installation of four skimmers at Sacramento gas stations over twenty-

7

four days between September 17, 2018, and October 12, 2018. (PSR ¶ 33(b)). This methodology overlooks the plain language of the guideline commentary which applies the $500 special rule to unauthorized access device cases notwithstanding the general rule that loss is the greater of actual or intended loss. U.S.S.G. § 2B1.1, comment. (n.3(F)(i)); *see also United States v. Onyesoh*, 674 F.3d 1157, 1159 (9th Cir. 2012) (unauthorized access devices must be usable for special rule of $500 per device to apply). By setting forth a special rule for unauthorized access device cases, the guidelines do not allow for loss in such cases to be calculated based on a reasonable estimate of intended loss.

Oganyan is subject to a minimum offense level of 12 because the offense involved the possession and use of device-making equipment. U.S.S.G. § 2B1.1(b)(11)(A)(i). With a two-level reduction for acceptance of responsibility, Oganyan's total offense level is 10. Given a criminal history category III, Oganyan's sentencing guideline range is 10-16 months.

### C. Oganyan objects to the recommended $3,000 fine.

A fine is not required "where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). Thus, the Court may waive a fine where the defendant establishes that he is unable and, even with installment schedule, not likely to become able to pay fine. U.S.S.G. § 5E1.2(e)(1). The Court must consider "the burden that the fine places on the defendant and his dependents relative to alternative punishments," U.S.S.G. § 5E1.2(d)(3), and may waive a fine where the defendant establishes the "imposition of fine would unduly burden the defendant's dependents . . . ." U.S.S.G. § 5E1.2(e)(2).

Oganyan is unemployed and unable to work due to his heart condition. (PSR ¶¶ 88-89). Due to their limited income, Oganyan and his family live with his brother-in-law. (PSR ¶ 72). Their income is derived from his wife's employment ($3,233 monthly) and modest rental income ($1,300 monthly). (PSR ¶ 92). Hence, the burden of any fine will be largely born by his wife and dependents. Because Oganyan is unable to pay, is

not likely to become able to pay a fine, and the burden of any fine will be largely borne by his wife who financially supports the family, the Court should not impose a fine.

### D. Oganyan objects to the recommended community-service condition of supervised release.

The USPO recommends as a condition of supervised release that "[w]hen not employed or excused by the Probation Office for schooling, training, or other acceptable reasons, [Oganyan] shall perform 20 hours of community service as directed by the Probation & Pretrial Services Office." This condition is unnecessarily punitive particularly since Oganyan is expected to receive a term of imprisonment, is unable to work due to his health, and is unlikely to return to school. *See* 18 U.S.C. 3583(d) (supervised release condition must be reasonably related to deterrent, protective and rehabilitative purposes of sentence and cannot involve greater deprivation of liberty than is reasonably necessary for these purposes). This condition is also unconstitutionally vague and confers too much discretion to the USPO to define "other acceptable reasons" that would excuse the weekly community service condition. *See United Guagliardo*, 278 F.3d 868, 872-73 (9th Cir. 2002) (supervised release condition that left "close proximity" undefined violated due process). For these reasons, the Court should not impose as a condition of supervised release that Oganyan perform 20 hours of community service weekly.

## IV.
## THE COURT SHOULD SENTENCE OGANYAN TO TEN-MONTHS IMPRISONMENT AND THREE YEARS SUPERVISED RELEASE

In *Kimbrough v. United States*, 552 U.S. 85, 101 (2007), the Supreme Court identified 18 U.S.C. § 3553(a) as the "overarching provision" of the Sentencing Reform Act. *Id*. at 101. This statute provides in relevant part as follows:

> the court shall impose a sentence *sufficient but not greater than necessary* to . . . reflect the seriousness of the offense, . . . promote respect for the law, and . . . provide just punishment for the offense; . . . afford adequate

9

>           deterrence to criminal conduct; . . . protect the public from further crimes
>           of the defendant; and . . . provide the defendant with needed educational or
>           vocational training, medical care, or other correctional treatment in the
>           most effective manner. . . .

18 U.S.C. § 3553(a)(2) (emphasis added). The Court must consider the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the kinds of sentences available, 18 U.S.C. § 3553(a)(3); the sentencing guidelines, 18 U.S.C. § 3553(a)(4); policy statements by the Sentencing Commission, 18 U.S.C. § 3553(a)(5); the need to avoid unwarranted disparities among defendants with similar records who have been convicted of similar conduct, 18 U.S.C. § 3553(a)(6); and the need to provide restitution. 18 U.S.C. § 3553(a)(7).

      The sentencing guideline range adequately considers the nature and circumstances of the offense, as well as Oganyan's history and characteristics. No loss was sustained by any person or bank. Nor was any loss ever likely to be sustained given that the conspiracy was initiated by the CI, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Neither Oganyan nor any other conspirator derived any proceeds from the conspiracy. By increasing Oganyan's adjusted offense to a minimum level 12 for use or possession of device making equipment, U.S.S.G. § 2B1.2(b)(11)(A)(i), the guidelines more than account for Oganyan's provision of device-making equipment to the CI. While Oganyan committed the instant offense within ten months of being released from prison for a similar crime, his criminal history category accounts for his prior conviction and the fact that he was on supervised release at the time of this offense. (PSR ¶¶ 51, 55-56). Oganyan is also expected to receive an additional term of imprisonment for violation of his supervised release which will run consecutive to the term of imprisonment imposed by this Court. U.S.S.G. § 7B1.3(f) (p.s). For these reasons, a sentence of ten-months imprisonment followed by three-years supervised release is sufficient but not greater than necessary to

reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

## V.
## PLACEMENT RECOMMENDATION AND SELF-SURRENDER

Oganyan requests that the Court recommend that he be housed in the federal correctional facility located in Lompoc, California. Oganyan also requests that the Court permit him to surrender himself directly to the institution on or before January 27, 2020.

Respectfully Submitted,

/s/

Dated: December 2, 2019      _____
CRAIG WILKE
Attorney for Defendant

11